IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **THE HARTFORD FINANCIAL** | : | |
| **SERVICES GROUP, INC.,** | : | |
| Plaintiff, | : | CIVIL NO.: WDQ-10-2720 |
| v. | : | |
| | : | |
| **CARL J. MEIL, JR., INC.,** *et al.*, | : | |
| Defendants. | : | |

…o0o…

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses the Request for Entry of Default Judgment Against Defendants Carl J. Meil, Jr., Inc. and Carl J. Meil, Jr. that Plaintiff The Hartford Financial Services Group, Inc. ("The Hartford") filed, ECF No. 10. Defendants Carl J. Meil, Jr., Inc. ("CJMI") and Carl J. Meil, Jr. have not filed a response, and the time for doing so has passed. *See* Loc. R. 105.2.a. On March 24, 2011, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302, Judge Quarles referred this case to me to review Plaintiff's Motion and to hold an evidentiary hearing, if necessary. ECF No. 11. I find that a hearing on liability is unnecessary in this case. *See* Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6. For the reasons stated herein, I recommend that Plaintiff's motion for default judgment be GRANTED IN PART and DENIED IN PART, without prejudice to renewal.

## I. FACTUAL AND PROCEDURAL HISTORY

Defendant CJMI entered into an Agency Agreement ("Agreement") with Plaintiff on or about March 1, 2002. Compl. ¶ 13, ECF No. 1. The Agreement authorized CJMI to solicit and bind new insurance policies and to provide services as an insurance agent on behalf of Plaintiff. *Id.* ¶ 14. In particular, the Agreement set forth the parties' relationship with respect to the payment of insurance premiums and the parties' rights with respect to termination. *Id.* ¶¶ 14, 17. The Agreement authorized CJMI, as The Hartford's fiduciary, to collect and hold premiums on polices placed with Plaintiff. *Id.* ¶¶ 15, 16. If CJMI breached the Agreement and failed to pay Plaintiff any premiums, Plaintiff reserved the right to convert agency-billed policies to a direct-billed basis. *Id.* The Agreement stated that either party could terminate the Agreement by written notice if the other party breached the Agreement. *Id.* ¶ 17. Plaintiff also could terminate the Agreement immediately, without notice, upon CJMI's "commission of a felony, fraud, willful misconduct or the misappropriation of funds." *Id.* ¶ 18. After termination of the Agreement, CJMI was required to return any equipment or property that Plaintiff gave to Defendants. *Id.* ¶ 19.

Beginning in October 2007, CJMI failed to make scheduled insurance premium payments due to Plaintiff. *Id.* ¶ 21. When Plaintiff inquired about the reasons for CJMI's missing payments, Mr. Meil assured Plaintiff that he soon would pay the scheduled insurance premium proceeds. *Id.* Mr. Meil repeatedly promised to send Plaintiff money for the missing insurance premium payments by mail, hand delivery, or wire transfer, but then did not make the payments. *Id.* ¶¶ 22, 24-26. Mr. Meil mailed Plaintiff checks as payment, but the bank returned the checks to Plaintiff for insufficient funds. *Id.* ¶¶ 23-25. Defendants still have not paid Plaintiff. *Id.* ¶ 27.

As a result of what Plaintiff called "Defendants' deceptive behavior, false assurances and substantial account delinquency," Plaintiff terminated the Agreement by letter dated May 16, 2008. *Id.* ¶ 28 & Ex. C, ECF No. 1-6 (May 16, 2008 letter). In a subsequent letter dated June 20, 2008, Plaintiff reiterated its termination of the Agreement and instructed Defendants to stop "misrepresenting the status of coverage to any policyholder and . . . taking any other actions inconsistent with termination of the Agency Agreement." *Id.* ¶ 30 & Ex. D, ECF No. 1-7 (June 20, 2008 letter). By letter dated August 1, 2008, counsel for Plaintiff again instructed CJMI to stop taking actions inconsistent with the Agreement. *Id.* ¶ 31 & Ex. E, ECF No. 1-8 (August 1, 2008 letter). This letter also advised CJMI that Plaintiff intended to take legal action regarding the money due. *Id.* In spite of these letters, as of September 13, 2010, Defendants' website still included Plaintiff in a list with other insurance companies that Defendants represented. *Id.* ¶ 29 & Ex. F, ECF No. 1-9 (printout of website).

After termination of the Agreement, Plaintiff notified its insureds that CJMI no longer represented Plaintiff and that future payments should be made directly to Plaintiff. *Id.* ¶ 29. Plaintiff instructed those insureds whose policies had lapsed for lack of payment to provide either payment or proof of payment if the insureds wished to reinstate their policies without lapse of coverage. *Id.* Subsequently, some of the insureds sent Plaintiff evidence that they had made payments to CJMI. *Id.* Several insureds also informed Plaintiff that Defendants "misrepresented facts regarding termination of the Agency Agreement and/or the status of coverage." *Id.* ¶ 32. For example, one insured informed Plaintiff that Mr. Meil advised it that "its policy was canceled in error and that it should disregard any cancellation notices issued by The Hartford." *Id.* Another insured claimed that Mr. Meil told him that Plaintiff misapplied his payment and that "any issues concerning his account had been resolved." *Id.*

3

On November 17, 2009, based on Mr. Meil's failure to forward insurance premiums to Plaintiff, the State of Maryland brought a Criminal Information against Mr. Meil for one count of felony insurance fraud for misappropriation of funds greater than $300. *Id.* ¶ 34. On December 8, 2009, Mr. Meil entered a plea agreement with the State whereby he pled guilty to the charge of felony insurance fraud. *Id.* ¶ 35. As a condition of Mr. Meil's guilty plea, the circuit court ordered Mr. Meil to pay Plaintiff $294,617.00. *Id.* ¶ 36. Plaintiff has not received any restitution payments from Mr. Meil. *Id.*

Plaintiff filed a Complaint on September 30, 2010, alleging, inter alia, that Defendants are liable for breach of contract (Count I), breach of fiduciary duty by misappropriation and misrepresentation (Count II), and tortious interference with contractual relations (Count III). *Id.* ¶¶ 39, 46, 49. Plaintiff attached an unexecuted copy of "The Hartford Agency Agreement"; an "Amendatory Endorsement to Agency Agreement," signed only on behalf of Plaintiff, along with an unexecuted "Personal Lines Insurance Agreement," an email from the Contract Team at The Hartford, asking "the agency" to sign "The Hartford New Agency Agreement Contracts adding PL for Carl J. Meil, Jr, Inc.," and a Personal Insurance Preferred Commission Schedule; Plaintiff's May 16, 2008, June 20, 2008, and August 1, 2008 letters to Defendants; the September 13, 2009 printout of CJMI's website; and copies of the Statement in Support of the Guilty Plea, Restitution Information, and Judgment of Restitution from Mr. Meil's plea agreement with the State of Maryland whereby he pled guilty to the charge of felony insurance fraud. Compl. Ex. A-I, ECF Nos. 1-4 – 1-12. Plaintiff sought a judgment of $285,564.95 against Defendants; pre-judgment interest; attorney's fees and costs; and, because it lacked an adequate remedy at law for Defendant's alleged tortious interference with contractual relations, "[e]ntry of an order temporarily, preliminarily and permanently enjoining Defendants from

misrepresenting to insureds, among other things, the status of insurance coverage on policies issued by The Hartford, including continuing to include The Hartford among the insurance companies listed on its website." Compl. 12.

On November 19, 2010, Defendants CJMI and Mr. Meil each were served properly via regular U.S. mail.[1] Return of Service, ECF Nos. 6-7. Defendants did not file an Answer. On December 23, 2010, Plaintiff moved for Entry of Default as to Defendants, and the Clerk entered an Order of Default on December 29, 2010. ECF Nos. 8-9. Plaintiff filed the pending motion for default judgment on March 23, 2011, asking the Clerk to enter a judgment against Defendants in the amount of $283,755.02.[2] Pl.'s Mot. 2. In support thereof, Plaintiff filed a Declaration of Deborah Schmaltz, Plaintiff's Financial Reporting and Collections Manager. Pl.'s Mot. Ex. 1, ECF No. 10-1. Ms. Schmaltz stated that "Defendants owe The Hartford $508,565.98 in unpaid insurance premiums, offset by $224,810.96 in commissions and penalties," for a total debt of $283,755.02. *Id.* ¶ 4.

## II. DISCUSSION

### A. Default Judgment

Rule 55(b) of the Federal Rules of Civil Procedure governs default judgments. Rule 55(b)(1) provides that the clerk may enter a default judgment if the plaintiff's claim is "for a sum certain or a sum that can be made certain by computation." A plaintiff's assertion of a sum in a

---

[1] Plaintiff repeatedly attempted to serve Defendants by certified mail, requesting Restricted Delivery, and by private process server. Pl.'s Mem. in Support of Pl.'s Mot. to Auth. Alt. Serv. of Process 1-2, ECF No. 4-2. After those attempts failed, Plaintiff filed a Motion to Authorize Alternative Service of Process, requesting permission to serve Defendants "by mailing via regular U.S. mail delivery copies of the summons, complaint, and all other papers filed with it." ECF No. 4. The Court granted Plaintiff's motion. Marginal Order, ECF. No. 5.

[2] Plaintiff notes that a review of the accounting records revealed that Defendants' debt to The Hartford was for $283,755.02, a lesser amount than the $285,564.95 alleged in the Complaint. Pl.'s Mot. 2 n.1. Plaintiff does not seek injunctive relief in its motion. *Id.*

complaint does not make the sum "certain" unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence. *See Medunic v. Lederer*, 64 F.R.D. 403, 405 n.7 (E.D. Pa. 1974) (concluding that clerk could not enter default judgment where damages were not liquidated), *reversed on other grounds*, 533 F.2d 891 (3d Cir. 1976).

If the sum is not certain or ascertainable through computation, Rule 55(b)(2) provides:

> [T]he party must apply to the court for a default judgment. . . . The court may conduct hearings or make referrals — preserving any federal statutory right to a jury trial — when, to enter or effectuate judgment, it needs to:
>
> > (A) conduct an accounting;
> > (B) determine the amount of damages;
> > (C) establish the truth of any allegation by evidence; or
> > (D) investigate any other matter.

As the Court noted in *Disney Enters. v. Delane*, 446 F. Supp. 2d 402, 405 (D. Md. 2006),

> The United States Court of Appeals for the Fourth Circuit has a "strong policy that cases be decided on the merits." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993). However, default judgment is available when the "adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

In determining whether to award a default judgment, the Court will take as true the well-pleaded factual allegations in the complaint, other than those pertaining to damages, as discussed *infra*. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("'The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.'") (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *see* Fed. R. Civ. P. 8(b)(6); *Agora Fin., LLC v. Samler*, No. WDQ-09-1200, 2010 WL 2899036, at *2-3 (D. Md. June 17, 2010) (quoting *Ryan*, 253 F.3d at 780-81); 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2688 (3d ed. 1998). Nonetheless, the

Court must "consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Wright & Miller, *supra*, § 2688; *see Ryan*, 253 F.3d at 780 ("'The defendant is not held . . . to admit conclusions of law. . . . [A] default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover.'" (quoting *Nishimatsu*, 515 F.2d at 1206)); *Agora Fin., LLC*, 2010 WL 2899036, at *3 (quoting *Ryan*, 253 F.3d at 780-81); *see also Ohio Cent. R.R. v. Cent. Trust Co.*, 133 U.S. 83, 91 (1890) (stating that even though plaintiff's allegations may be taken as true and "the defendant may not be allowed, on appeal, to question the want of testimony or the insufficiency or amount of the evidence, he is not precluded from contesting the sufficiency of the bill, or from insisting that the averments contained in it do not justify the decree"); *e.g.*, *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005) (concluding that "Plaintiff's pleadings, taken as true, establish all of the alleged violations").

More than five months have passed since Defendants were served the Complaint, yet Defendants have not pled or otherwise asserted a defense. Plaintiff moved for both an entry of default on December 23, 2010, and a default judgment on March 23, 2011, and Defendants still did not respond. It is within the Court's discretion to grant default judgment when a defendant is unresponsive. *See Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir. 1987) (upholding a default judgment when the defendant lost its summons and did not respond within the proper period); *Disney Enters.*, 446 F. Supp. 2d at 405-06 (holding that entry of default judgment was proper because defendant had been properly served with complaint and did not respond, even after plaintiffs tried repeatedly to contact him); *see also Lawbaugh*, 359 F. Supp. 2d at 422 (concluding that default judgment was appropriate because defendant was "unresponsive for more than a year" after denial of his motion to dismiss, even though he was

properly served with plaintiff's motions for entry of default and default judgment). Thus, the Court should grant default judgment as to any counts for which Plaintiff has established Defendants' liability.

With regard to liability, Plaintiff first claims that Defendants are liable for breach of contract. Compl. ¶¶ 37-43. A breach of contract is "a failure without legal excuse to perform any promise which forms the whole or part of a contract . . . ." *In re Ashby Enters., Ltd.*, 250 B.R. 69, 72 (Bankr. D. Md. 2000) (quoting *Conn. Pizza, Inc. v. Bell Atl.-Wash.*, *D.C., Inc*., 193 B.R. 217, 225 (Bankr. D. Md. 1996) (quoting *Weiss v. Sheet Metal Fabricators, Inc*., 110 A.2d 671, 675 (Md. 1955)) (quotation marks omitted)). A contract exists where there is "mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration." *CTI/DC, Inc. v. Selective Ins. Co. of Am*., 392 F.3d 114, 123 (4th Cir. 2004).

As noted, Defendants failed to plead or otherwise assert a defense. Thus, all of Plaintiff's factual allegations in their Complaint not pertaining to damages are deemed admitted. Fed. R. Civ. P. 8(b)(6); *Ryan*, 253 F.3d at 780. Plaintiff alleged that CJMI promised to solicit and bind new insurance policies and to provide services as an insurance agent on behalf of Plaintiff by collecting premiums from insureds on policies placed with Plaintiff and forwarding the premiums to Plaintiff. *Id*. ¶¶ 14-16. In return, Plaintiff promised to pay CJMI commissions for policies it sold on behalf of Plaintiff. *Id*. ¶ 13 & Ex. 1, ECF No. 1-4. Plaintiff also provided an unsigned copy of the alleged contract to the Court. This Court accepts as true Plaintiff's allegations that the parties made the promises described in the Complaint and stated in the Agreement. *Ryan*, 253 F.3d at 780. Thus, based on Plaintiff's allegations, it is clear that the parties mutually assented to the Agreement, which had definite terms and sufficient consideration, in the form of commissions that Plaintiff would pay CJMI for policies CJMI sold

for Plaintiff, *see* Compl. ¶¶13-16 & Ex. 1, such that a contract existed. *See CTI/DC, Inc.*, 392 F.3d at 123.

According to Plaintiff's allegations, Defendants did not perform the services they promised to perform when they entered into the contract with Plaintiff. As described above, beginning in October 2007, CJMI sold policies on behalf of Plaintiff and failed to meet its obligations regarding forwarding premium payments to Plaintiff. *Id.* ¶ 21. Even though Mr. Meil repeatedly promised to send Plaintiff the money he owed, he never fulfilled his promises to pay Plaintiff, nor offered a legal excuse for his failure, *id.* ¶¶ 22-26, thereby breaching the contract. *See In re Ashby Enters., Ltd.*, 250 B.R. at 72. As of the date of this motion, Defendants still owes Plaintiff money for the premiums they withheld. Pl's. Mot. 2. Therefore, based on Plaintiff's well-pleaded factual allegations, Defendants are liable to Plaintiff for breach of contract, and a default judgment is proper on Count I. *See In re Ashby Enters., Ltd.*, 250 B.R. at 72.

Plaintiff also claims that Defendants are liable for "Breach of Fiduciary Duties by Misappropriation and Misrepresentation" because they "breached their fiduciary duties to The Hartford by, among other things, misappropriating insurance premium proceeds, misrepresenting to insureds facts regarding termination of the Agency Agreement and/or the status of coverage, and by failing to return to The Hartford its property." Compl. ¶ 46. Although the elements of breach of fiduciary duty are stated in case law, *see, e.g.*, *Pease v. Wachovia SBA Lending, Inc.*, 6 A.3d 867, 889 (Md. 2010) (quoting *Alleco Inc. v. Harry & Jeanette Weinberg Found.*, 665 A.2d 1038, 1046 (Md. 1995)), breach of fiduciary duty is not an independent cause of action for damages. *See Swedish Civil Aviation Admin. v. Project Mgmt. Enters.*, 190 F. Supp. 2d 785, 801 (D. Md. 2002) (holding that "there is no independent tort for breach of fiduciary duty in

9

Maryland"); *Latty v. St. Joseph's Soc'y of the Sacred Heart, Inc.*, No. 2487, 2011 WL 1226400 (Md. Ct. Spec. App. Apr. 4, 2011) ("Maryland courts generally do not recognize breach of fiduciary duty as a stand alone tort. . . . [A] claim for monetary damages at law [based on breach of fiduciary duty] does not constitute a separate cause of action."); *Int'l Bhd. of Teamsters v. Willis Corroon Corp.*, 802 A.2d 1050, 1051 n.1 (Md. 2002) ("[A]lthough the breach of a fiduciary duty may give rise to one of more causes of action, in tort or in contract, Maryland does not recognize a separate tort action for breach of fiduciary duty."); *Vinogradova v. SunTrust Bank, Inc.*, 875 A.2d 222, 231 (Md. Ct. Spec. App. 2005) (same). Nonetheless, breach of fiduciary duty may be an element of another cause of action. *See* Paul Mark Sandler & James K. Archibald, *Pleading Causes of Action in Maryland* 436 (4th ed. 2008) (citing *Int'l Bhd. of Teamsters*, 802 A.2d at 1051 n.1; *Vinogradova*, 875 A.2d at 231).

Here, Plaintiff alleges "Breach of Fiduciary Duty by Misappropriation and Misrepresentation," Compl. 11, which is not a well-defined tort. Plaintiff has not provided any case law stating the elements of this tort. Thus, Plaintiff failed to support its motion for default judgment on this claim because it has not established liability, and a default judgment is not proper on Count II.

However, this is largely a moot point because the injury Plaintiff alleges in Count II is the same as what it alleges in Count I: the payment from clients that Defendants received but failed to forward to Plaintiff.[3] The relief would be identical. Under what is known as the "one wrong, one recovery rule," a party may not recover twice for one injury, even if the party asserts

---

[3] Plaintiff does not seek a double recovery in its Complaint or motion for default judgment; Plaintiff seeks one amount of damages that could be attributed to the injury alleged in either claim. *See* Compl. 12 (stating that Plaintiff seeks "Judgment in [its] favor against Defendants in the amount of $285,564.95," without associating the amount with a specific claim); Pl.'s Mot. 2 (stating that "The Hartford's claim is for a sum certain amount of $283,755.02," without associating the amount with a specific claim).

multiple, consistent theories of recovery. *See Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 333 (1980). ("It . . . goes without saying that the courts can and should preclude double recovery by an individual."); *United States v. Rachel*, 289 F. Supp. 2d 688, 697 (D. Md. 2003) ("The one wrong, one recovery rule precludes a party from double recovery for a single injury." (citing *Kramer v. Emche*, 494 A.2d 225, 231 (Md. Ct. Spec. App. 1985)). Counts I and II allege liability under Maryland law, and under Maryland law, "[p]leading several different theories or causes of action does not . . . transform a single injury into multiple injuries." *Kramer*, 494 A.2d at 232; *see Montgomery Ward & Co. v. Cliser*, 298 A.2d 16, 26-27 (Md. 1972) ("'It is generally recognized that there can be only one recovery of damages for one wrong or injury. Double recovery of damages is not permitted; the law does not permit a double satisfaction for a single injury. A plaintiff may not recover damages twice for the same injury simply because he has two legal theories . . . The overlapping of damages is generally not permissible, and a person is not entitled to recover twice for the same elements of damage growing out of the same occurrence or event . . .'") (quoting 25 C.J.S. Damages § 3). Thus, because Counts I and II stem from the same offense, and the injury is the same for both offenses, Plaintiff's recovery is limited to the amount of damages it incurred from Defendants' retention of client funds, whether found to be a breach of contract or a breach of fiduciary duty by misappropriation or misrepresentation. Plaintiff could not recover additional damages for Count II when it may recover damages for the same injury under Count I, even if a default judgment were proper on Count II.

In Count III, Plaintiff claims that Defendants are liable for tortious interference with contractual relations. Compl. ¶¶ 48-51. "The elements of tortious interference with contractual relations are: (1) existence of a contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) breach

of that contract by the third party; (5) resulting damages to the plaintiff." *Fraidin v. Weitzman*, 611 A.2d 1046, 1057 (Md. Ct. Spec. App. 1992).

Here, Plaintiff alleges sufficient facts to demonstrate the elements for tortious interference with contractual relations. With regard to the first element, Plaintiff alleges that it had contractual relationships with its insureds, under which each insured would pay Plaintiff premiums in exchange for Plaintiff providing insurance coverage. Compl. ¶ 29. As for the second element, Defendants had knowledge of the contracts between Plaintiff and its insureds because Defendants acted on behalf of Plaintiff to solicit the insureds and bind them to contracts with Plaintiff. *Id.* ¶¶ 14-16. As for the third element, Plaintiff alleges that Defendants intentionally interfered with these contracts by misappropriating premiums that the insureds paid and by making false statements to the insureds regarding the status of their insurance coverage. *Id.* ¶¶ 21, 32. Specifically, Defendants collected insurance premiums from the insureds, claiming that CJMI would forward the premiums to Plaintiff, and then failed to remit the premiums to Plaintiff. *Id.* Additionally, Defendants inform the insureds that Plaintiff had received their payments. *Id.* With regard to the fourth element, when CJMI failed to deliver the premiums for some of the insureds, those insureds were in breach of their contracts with Plaintiff. *Id.* ¶ 35. As for the fifth element, as a result of Defendant's conduct, Plaintiff never received the premiums due and "suffered damages . . . including harm to its business reputation and relationship with its insureds." *Id.* ¶¶ 40, 50. Therefore, based on Plaintiff's well-pleaded factual allegations, Defendants are liable to Plaintiff for tortious interference with contractual relations, and a default judgment is proper on Count III. *See In re Ashby Enters., Ltd.*, 250 B.R. at 72.

**B. Damages**

Although liability has been established for Defendants' breach of contract,[4] an allegation "relating to the amount of damages" is not deemed admitted based on a defendant's failure to deny in a required responsive pleading. Fed. R. Civ. P. 8(b)(6); *see Trs. of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, LLC*, No. DKC-08-2805, 2009 WL 2982951, at *1 (D. Md. Sept. 14, 2009) ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not."). Therefore, on default judgment, "[c]laims for damages must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed." *U2 Home Entm't, Inc. v. Fu Shun Wang*, 482 F. Supp. 2d 314, 318 (E.D.N.Y. 2007); *see Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (same). The Court only may award damages without a hearing if the record supports the damages requested. *See Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, No. 6:09cv00004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that there was "no need to convene a

---

[4] Liability also has been established for Defendants' tortious interference with contractual relations. However, even though Plaintiff stated in its Complaint that it "lack[ed] an adequate remedy at law" for this tort, and therefore sought injunctive relief, Plaintiff does not seek injunctive relief in its motion for default judgment. *See* Pl.'s Mot. 1-3. Therefore, it is not proper to grant injunctive relief, and relief should be limited to the damages sought. *See Innovative Value Corp. v. Bluestone Fin., LLC*, No. DKC-09-111, 2009 WL 3348231, at *2 n.2 (D. Md. Oct. 15, 2009) (noting that the complaint included four counts and requests for damages and injunctive relief, but plaintiffs only sought a default judgment and injunctive relief as to one count in their motion; dismissing the other counts on that basis); *Stellmacher v. Guerrero*, No. CIV 10-1357, 2010 WL 2889771, at *1 (E.D. Cal. July 21, 2010) (stating that "plaintiff is entitled to the relief in the form and amount of damages and the nature of equitable relief *requested in the prayer for default judgment*, which does not differ in kind from the relief requested in the complaint") (emphasis added); *Underwood & Wong, Inc. v. Enriquez*, No. 2:09-cv-1686, 2010 WL 2889745, at *2 (E.D. Cal. July 21, 2010) ("plaintiff is entitled to the relief *requested in the prayer for default judgment*, which does not differ in kind from the relief requested in the complaint") (emphasis added).

formal evidentiary hearing on the issue of damages" after default judgment was entered against defendant because plaintiff submitted affidavits and printouts of electronic records establishing the amount of damages it sought). "Rule 55(b) of the Federal Rules of Civil Procedure allows a court to enter judgment against a defendant who has defaulted, if the judgment is for a sum certain and is shown by affidavit by the Plaintiff." *Id.*

Here, Plaintiff asked the Clerk to enter a judgment against Defendants in the amount of $283,755.02, representing the amount Plaintiff claims that Defendants owe The Hartford under the Agreement. Pl.'s Mot. 2. As noted, Plaintiff submitted the Declaration of Deborah Schmaltz, Plaintiff's Financial Reporting and Collections Manager, in support of its motion for default judgment. *Id.* at 2 & Ex. 1 ¶ 4. The affidavit, which is barely a full page of text, is largely conclusory. In it, Ms. Schmaltz declared that, based on The Hartford's records, Defendants owe Plaintiff $508,565.98 in unpaid insurance premiums, minus $224,810.96 in commissions and penalties, for a total debt of $283,755.02. *Id.* Ms. Schmaltz did not attach the records or explain how she arrived at the figures she provided.

*Trustees of the Operating Engineers Trust Fund v. Dominion Caisson Corp.*, No. DKC-10-227, 2010 WL 1713999 (D. Md. April 27, 2010), describes the level of detail necessary to support a request for damages. In that action for damages for the defendant's alleged failure to make contributions under a collective bargaining agreement, the plaintiffs sought a default judgment and damages of $879,109.36 and provided two supporting affidavits. *Id.* at *2-3. One affidavit, from the employee responsible for monitoring and maintaining the relevant records, stated (1) the total amount of the defendant's outstanding contributions for June 2008 through December 2009, (2) the total amount of liquidated damages "'[f]or various months between February 2001 and December 2009,'" and (3) the interest owed for February 2001 through

14

December 2009. *Id.* at *3 (quoting affidavit). It also "provid[ed] a breakdown of the specific amounts owed to each plaintiff fund." *Id.* The second affidavit, from the plaintiffs' attorney, indicated the number of hours he worked "'on those activities'" and his hourly rate. *Id.* (quoting affidavit). Despite the fact that those affidavits contained significantly greater detail than those submitted in this case, the Court concluded that both affidavits "fail[ed] to provide adequate support for the amounts requested," reasoning, with regard to the employee's assertions, *id.*:

> [The employee] has merely asserted, in conclusory fashion, the amounts she believes are owed to Plaintiffs. She has not demonstrated how she arrived at these figures, nor has she provided any supportive documentation attesting to Defendant's obligations under the collective bargaining and trust agreements. Absent such information, it is impossible for the court to verify the amounts claimed.

The Court contrasted the employee's affidavit with "a sufficient affidavit" provided in another action, in which the affiant "'explained how she reached the sum'" and attached supporting documents including:

> "copies of the Amendments to the Trust Fund Agreements, which indicate the deadlines for employers' submissions of contribution reports and payments of contributions, and provide for liquidated damages and interest; copies of contribution reports that Defendant submitted late; copies of Statements of Accounts Receivable sent to Defendant in March, 2010; and a copy of the Agreement for the Participation of Non-Collectively Bargained Employees in the Laborers' District Council Health & Welfare Trust Fund No. 2."

*Id.* (quoting *Laborers' District Council Pension v. E.G.S., Inc.*, Civ. No. WDQ-09-3174, at *4 (D. Md. April 16, 2010)).

Here, the level of detail provided in the affidavit does not rise even to the level of detail provided in the inadequate employee affidavit in *Trustees of the Operating Engineers Trust Fund*, 2010 WL 1713999, at *3. Ms. Schmaltz does not attach any records or provide any explanation of how she reached the figures she provides. Without this information, the Court is unable to verify the amount of damages stated in the affidavit. *See id.* Accordingly, I

recommend that, with regard to damages, Plaintiff's motion for default judgment be denied without prejudice to Plaintiff's right to resubmit the motion with additional detailed, supportive documents.

### III. CONCLUSION

In sum, I recommend that:

(1) with regard to liability, the Court GRANT Plaintiff's motion for default judgment and enter a default judgment as to Counts I and III;

(2) with regard to liability, the Court DENY Plaintiff's motion for default judgment as to Count II; and

(3) with regard to damages, the Court DENY Plaintiff's motion for default judgment without prejudice to Plaintiff's right to resubmit the motion with additional detailed, supportive documents.

The parties have fourteen (14) days in which to file objections to this Report and Recommendation pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.[5]

Dated: _____  /s/
Paul W. Grimm
United States Magistrate Judge

sg/lyb

---

[5] The Court acknowledges the research and writing assistance provided by Sage Graham, a student at the University of Maryland School of Law, who interned in Chambers this spring.