# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **THE HARTFORD FINANCIAL** | : | |
| **SERVICES GROUP, INC.,** | : | |
| Plaintiff, | : | CIVIL NO.: WDQ-10-2720 |
| v. | : | |
| | : | |
| **CARL J. MEIL, JR., INC.,** *et al.*, | : | |
| Defendants. | : | |

…o0o…

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses the Supplemental Motion for Default Judgment as to Damages Against Defendants Carl J. Meil, Jr., Inc. ("CJMI") and Carl J. Meil, Jr. that Plaintiff The Hartford Financial Services Group, Inc. ("The Hartford") filed, ECF No. 15.[1] Defendants Carl J. Meil, Jr., Inc. ("CJMI") and Carl J. Meil, Jr. have not filed a response, and the time for doing so has passed. *See* Loc. R. 105.2.a. I find that a hearing is unnecessary in this case. *See* Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6. For the reasons stated herein, I recommend that Plaintiff's supplemental motion for default judgment as to damages be GRANTED IN PART and DENIED IN PART.

The factual and procedural history of this case, as well as the standard of review for a motion for default judgment, appear at length in my May 6, 2011 Report and Recommendation,

---

[1] On March 24, 2011, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302, Judge Quarles referred this case to me to review Plaintiff's motion and to hold an evidentiary hearing, if necessary. ECF No. 11.

ECF No. 13. There, I found that liability had been established for Defendants' breach of contract and tortious interference with contractual relations. Report & Recom. 9, 12. I recommended that, with regard to liability, the Court GRANT Plaintiff's motion for default judgment and enter a default judgment as to Counts I (breach of contract) and III (tortious interference with contractual relations), but not Count II (breach of fiduciary duty by misappropriation and misrepresentation). *Id.* at 16.

As for relief, I noted that Plaintiff sought injunctive relief on its tortious interference claim but did not seek injunctive relief in its motion for default judgment, *see* Pl.'s Mot. 1-3, such that it was not proper to grant injunctive relief. Relief must be limited to the damages sought—those stemming from Defendants' breach of contract. *See Innovative Value Corp. v. Bluestone Fin., LLC*, No. DKC-09-111, 2009 WL 3348231, at *2 n.2 (D. Md. Oct. 15, 2009). I recommended that, with regard to damages on Plaintiff's breach of contract claim, the Court deny Plaintiff's motion for default judgment without prejudice to Plaintiff's right to resubmit the motion with additional detailed, supportive documents. Report & Recom. 16. The Court adopted my Report and Recommendation, ECF No. 14, and The Hartford filed its supplemental motion.

The Court only may award damages that testimony or evidence from the record or an evidentiary hearing supports, and if support is present in the record, an evidentiary hearing is not necessary. *See Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, No. 6:09cv00004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that there was "no need to convene a formal evidentiary hearing on the issue of damages" after default judgment was entered against defendant because plaintiff submitted affidavits and printouts of electronic records establishing the amount of damages it sought).

Here, Plaintiff asks the Court to award damages against Defendants in the amount of $283,778.78, representing the amount Plaintiff claims that Defendants owe The Hartford under the Agency Agreement. Pl.'s Supp. Mot. 1. In support, Plaintiff submitted the Supplemental Declaration of Deborah Schmaltz, Plaintiff's Financial Reporting and Collections Manager, ECF No. 15-2 ("Decl."), a 29-paragraph document with 21 exhibits attached, ECF Nos. 15-5 – 15-25. The attachments include checks that insureds paid to Defendant CJMI; Producer's Fact Sheets, showing annual premiums due from insureds; Commercial Insurance Premium Finance and Security Agreements between insureds and Defendant CJMI; and Statements of Premium Adjustment, showing return premiums to insureds. Decl. Ex. 1-15, ECF Nos. 15-5 – 15-19. Plaintiff summarizes the supporting details in a table in its Memorandum of Law in Support of Plaintiff's Supplemental Motion for Entry of Default Judgment as to Damages, ECF No. 15-1. The table provides the amount of unpaid insurance premiums, the amount of offset, if any, and the total due and owing for thirteen line items; the amounts for three premium adjustments; the amounts of direct account commissions and supplemental commission that Defendants earned; and the late payment fee for Defendants' failure to remit payments. Pl.'s Mem. 4-6.

Plaintiff suggests that Defendants are liable for all outstanding amounts on the insurance premiums. *See* Decl. ¶ 8 (referring to "the premiums that Defendants failed to pay to The Hartford"); *id.* ¶¶ 9-21 (referring to the "total unpaid premiums owed to The Hartford by Defendants" for various insureds); *id.* Ex. 1, 3, 6-9, 11-15 (Producer's Fact Sheets, showing annual premiums). It is true that the Agency Agreement provided for CJMI to pay Plaintiff "any balances shown as due." Agr. VI.6.1(e), Compl. Ex. A, ECF No. 1-4. However, the Agency Agreement also provided that Plaintiff "reserve[d] the right to convert any or all agency-billed policies to a direct-billed basis," such that Plaintiff could bill the insureds directly for

outstanding premiums, rather than relying on CJMI, if CJMI breached the Agency Agreement. Agr. VI.6.1(c), Compl. Ex. A, ECF No. 1-4. Plaintiff exercised that right: "After termination of the Agency Agreement, The Hartford notified insureds that Defendants no longer represented The Hartford and that payments should be made directly to The Hartford if they wished their coverage to continue without interruption." Decl. ¶ 27. Notably, "[t]hose insureds that chose to continue their policies are making premium payments directly to The Hartford." *Id.* Thus, Plaintiff may seek any outstanding amounts on the insurance premiums directly from the insureds, and Defendants are not liable for those amounts.

Moreover, a Producer's Fact Sheet, showing the amount owed by the insured, is insufficient standing alone to demonstrate Defendants' liability for any part of the insurance premium. To recover any amount from Defendants, Plaintiff must show that Defendants received that amount from an insured. Thus, although Plaintiff alleges that Defendants failed to remit payment on insurance premiums sold to Carl J. Meil Jr., Inc. (as an insured) and Connelly Funeral Home of Essex, Decl. ¶¶ 14-15, Plaintiff has not shown any proof of payment that Defendants received from the insureds and therefore has not shown Defendants' liability with regard to those premiums.

The attachments to Ms. Schmaltz's Supplemental Declaration include a check that All Star Plumbing & Heating Inc., an insured, paid to Defendant CJMI for $20,369.00, Decl. Ex. 1, ECF No. 15-5, for which Ms. Schmaltz stated that "Defendants earned commissions of $2,192.25," Decl. ¶ 9. Thus, the amount that CJMI received, less commissions, would be $18,446.75. Yet, Plaintiff alleges that "[t]he total unpaid premiums owed to The Hartford by Defendants for policies issued to All Star Plumbing & Heating, Inc., offset by commissions owed by The Hartford to Defendants, is $19,448.65." *Id.* According to Ms. Schmaltz, "the

insured canceled these policies and The Hartford returned to the insured $12,473.00 in premiums, which resulted in an adjustment to Defendants' commissions in the amount of $1,558.94." *Id.* However, the Statements of Premium Adjustment shows return premiums of $2,101.00 and $6,173.00, Decl. Ex. 2, ECF No. 15-6, or a total of $8,274.00, rather than $12,473.00. Because Plaintiff has not substantiated the return of the greater amount nor provided the Court with the percentage Defendants earned in commissions on these policies, Defendants' liability for these policies is limited to $18,446.75.

Additionally, Ms. Schmaltz attached a Commercial Insurance Premium Finance and Security Agreement between CJMI and Athena Environmental Sciences, Inc. ("Athena"), showing total premiums of $15,021.00 and a cash down payment of $1,717.74. Decl. Ex. 3, ECF No. 15-7. This document shows that CJMI received $1,717.74 from Athena and therefore is liable for that amount, less commissions. According to Ms. Schmaltz, "Defendants earned commissions of $1,724.91 for these policy placements." Decl. ¶ 10. The attachments to Ms. Schmaltz's Declaration also include Statements of Premium Adjustment, showing a return premium of $1,002.00 to Athena. Decl. Ex. 4, ECF No. 15-8. Ms. Schmaltz states that the return was greater ($1,994.00), but she does not provide any documents to substantiate that figure. Decl. ¶ 10. Her calculation of the adjustment to Defendants' commissions is based on the greater return. Because The Hartford has not documented the return of the greater amount, and Defendants' original commissions ($1,724.91) are greater than the amount The Hartford has proven that Defendants received ($1,717.74), Defendants have no proven liability for these policies.

The attachments also include a check that insured Maryland Permit Service paid to Defendant CJMI for $400.00. Decl. Ex. 5, ECF No. 15-9. Ms. Schmaltz states that Defendants

5

earned no commission on this amount due to a conflict of interest.  Decl. ¶ 11.  Therefore, Defendants are liable to Plaintiff for $400.00 for that policy.

Plaintiff claims that Defendants are liable to it for unpaid premiums for policies issued to Living Classrooms Foundation.  *Id.* ¶ 12.  However, the Commercial Insurance Premium Finance and Security Agreement between CJMI and Living Classrooms Foundation, which The Hartford attached as an exhibit, shows a cash down payment covering five policies, only two of which were with The Hartford, but does not show what percentage of the down payment was allocated to The Hartford's policies.  Decl. Ex. 6, ECF No. 15-10.  Plaintiff has not attached any checks paid to CJMI or provided any other evidence that Defendants received payment from Living Classrooms Foundation.  Therefore, The Hartford has not demonstrated Defendants' liability for a specific amount under those policies.

Ms. Schmaltz also attached checks totaling $30,518.00 that Blair & Sons Co. paid to Defendant CJMI for policies.  Decl. Ex. 7, ECF No. 15-11.  Ms. Schmaltz states that Defendants made a partial payment and earned commissions, such that they only owe $10,882.02.  Decl. ¶ 13.  Therefore, Defendants are liable to The Hartford for $10,882.02 on those policies.

Also attached are checks that insured Joy in Learning, Inc. paid to Defendant CJMI totaling $1,348.20, Decl. Ex. 10, ECF No. 15-14, and Ms. Schmaltz states that Defendants earned commissions, such that they only owe $1,145.97, Decl. ¶ 16.  Therefore, Defendants are liable to Plaintiff for $1,145.97 on that policy.

Ms. Schmaltz also attached checks that insured Food Service Partners, Inc. paid to Defendant CJMI totaling $267,747.00, Decl. Ex. 11, ECF No. 15-15, and Ms. Schmaltz states that Defendants made partial payments and earned commissions, such that they only owe

6

$212,683.33, Decl. ¶ 17. Therefore, Defendants are liable to Plaintiff for $212,683.33 on those policies.

Additionally, Ms. Schmaltz attached a check that insured Harford Heights Child Care Center, Inc. paid to Defendant CJMI for $3,519.00, of which $1,309.00 pertained to The Hartford's policy. Decl. Ex. 12, ECF No. 15-16. Ms. Schmaltz states that Defendants earned commissions, such that they only owe $1,237.54. Decl. ¶ 18. Therefore, Defendants are liable to Plaintiff for $1,237.54 on that policy.

Ms. Schmaltz also attached checks totaling $46,011.78 that insured James Walker Co. paid to Defendant CJMI, Decl. Ex. 13, ECF No. 15-17, and Ms. Schmaltz alleges that Defendants made a partial payment and earned commissions, such that they only owe $34,459.08, Decl. ¶ 19. Therefore, Defendants are liable to The Hartford for $34,459.08 on those policies.

She also attaches a check that insured Kinder Class Child Care Center, Inc. paid to Defendant CJMI for $23.00. Decl. Ex. 14, ECF No. 15-18. Ms. Schmaltz states that Defendants earned commissions, such that they only owe $13.73. Decl. ¶ 20. Therefore, Defendants are liable to The Hartford for $13.73 on that policy.

Also attached are checks that insured Patapsco Flea Market Management, Inc. paid to Defendant CJMI for $85,421.00. Decl. Ex. 15, ECF No. 15-19. According to Ms. Schmaltz, Defendants made a partial payment and earned commissions, such that they only owe $75,524.11. Decl. ¶ 21. Therefore, Defendants are liable to Plaintiff for $75,524.11 on those policies.

According to Ms. Schmaltz, Defendants also owe Plaintiff "a late payment fee of $1,181.00 for failure to remit premiums to The Hartford," pursuant to the Agency Agreement.

Decl. ¶ 26 & Ex. 20, ECF No. 15-24; *see* Agr. VI.6.1(f) (imposing late fee not to exceed 1%). Thus, Defendants are liable to Plaintiff for the late fee of $1,181.00. Also, Ms. Schmaltz attaches paperwork generated through "an audit conducted on a policy issued by The Hartford to Hodes, Pessin & Katz, P.A.," showing that Defendants earned a surplus of $359.64 in commissions. Decl. ¶ 22 & Ex. 16, ECF No. 15-20. Therefore, Defendants are liable to Plaintiff for the surplus of $359.64.

Conversely, audits conducted on other policies showed that Defendants should have earned more in commissions, such that the total amount of Defendants' liability to The Hartford should be reduced by *$29.43*, the amount that The Hartford owes Defendants for those commissions. Decl. ¶¶ 23-24 & Ex. 17-18, ECF Nos. 15-21 – 15-22. Additionally, Ms. Schmaltz states that Plaintiff owes Defendants "a supplemental commission" of *$24,783.00*, and Defendants' liability should be reduced by that amount. Decl. ¶ 25 & Ex. 19, ECF Nos. 15-23. Further, Plaintiff owes Defendants commissions totaling *$119,854.98*, earned between March 2008 and May 2011, and Defendants' liability should be reduced by that amount. Decl. ¶ 27 & Ex. 21, ECF Nos. 15-25. Finally, Plaintiff received a check from Defendants for *$5,049.00*, as part of the restitution Defendant Meil was ordered to pay in the related criminal action. ECF No. 16.

## III. CONCLUSION

In sum, Defendants are liable to Plaintiff for the following amounts:

| Description | Defendants' liability | Plaintiff's obligations owed to Defendants and prior payments made by Defendants |
|---|---|---|
| Payments from All Star Plumbing & Heating Inc. | $18,446.75 | |
| Payments from Maryland Permit Service | $400.00 | |
| Payments from Blair & Sons Co. | $10,882.02 | |

8

| | | |
|---|---:|---:|
| Payments from Joy in Learning, Inc. | $1,145.97 | |
| Payments from Food Service Partners, Inc. | $212,683.33 | |
| Payments from Harford Heights Child Care Center, Inc. | $1,237.54 | |
| Payments from James Walker Co. | $34,459.08 | |
| Payments from Kinder Class Child Care Center, Inc. | $13.73 | |
| Payments from Patapsco Flea Market Management, Inc. | $75,524.11 | |
| Late payment fee | $1,181.00 | |
| Surplus in commissions | $359.64 | |
| Deficiency in commissions | | ($29.43) |
| Supplemental commission | | ($24,783.00) |
| Outstanding commissions | | ($119,854.98) |
| Restitution received in criminal action | | ($5,049.00) |
| **TOTAL (Defendants' liability minus Plaintiff's obligations to Defendants)** | **$206,616.76** | |

Therefore, I recommend that:

1) Plaintiff's Motion be GRANTED IN PART and DENIED IN PART; and

2) The Court award Plaintiff $206,616.76 in damages.[2]

The parties have fourteen (14) days in which to file objections to this Report and Recommendation pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Dated: July 29, 2011  /s/
Paul W. Grimm
United States Magistrate Judge

lyb

---

[2] I also recommend that the Court impose an obligation that The Hartford not collect twice from the judgment in this case and the restitution from the criminal case.